

Opinions of the United
States Court of Appeals
for the Third Circuit

10-13-1999

# United States v New Jersey

Precedential or Non-Precedential:

Docket 98-6447

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"United States v New Jersey" (1999). *1999 Decisions.* Paper 281.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/281

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed October 13, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-6447

UNITED STATES OF AMERICA

v.

STATE OF NEW JERSEY;
NEW JERSEY STATE DEPARTMENT OF PERSONNEL;
EUGENE MCCAFFREY; RONALD BURKHARDT

(Newark, New Jersey District Civil No. 88-5087)

DONNA ROMAN; MARY VASQUEZ;
CECILIA A. SHINN; CARRIE E. REED

v.

NEW JERSEY DEPT. OF PERSONNEL;
CITY OF NEWARK

(Newark, New Jersey District Civil No. 87-2331

ARMADINA TAHANEY

v.

NEW JERSEY DEPARTMENT OF PERSONNEL;
MERIT SYSTEM BOARD

(Newark, New Jersey District Civil No. 88-4080)

       State of New Jersey; New Jersey State
       Department of Personnel; and *Anthony J.
       Cimino, Commissioner of Personnel, New
       Jersey State Department of Personnel,

       Appellants

*(Pursuant to Rule 12(a), F.R.A.P.)

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. Nos. 88-05087, 87-02331, and 88-4080)
District Judge: Honorable William G. Bassler

Argued September 13, 1999

BEFORE: GREENBERG, SCIRICA, and RENDELL,
Circuit Judges

(Filed: October 13, 1999)

John J. Farmer, Jr.
Attorney General of New Jersey
Joseph L. Yannotti
Assistant Attorney General
Don E. Catinello (argued)
Deputy Attorney General
Todd A. Widger
Deputy Attorney General
P.O. Box 112
Trenton, NJ 08625

Attorneys for Appellants,
State of New Jersey, New Jersey
State Department of Personnel and
Anthony J. Cimino, Commissioner
of Personnel, New Jersey State
Department of Personnel

Bill Lann Lee
Acting Assistant Attorney General
Dennis J. Dimsey
Timothy J. Moran (argued)
Attorneys, Department of Justice
P.O. Box 66078
Washington, DC 20035-6078

Attorneys for Appellee
United States of America

2

          Peter W. Till
          Wilf & Silverman
          820 Morris Turnpike
          Suite 201
          Short Hills, NJ 07078

          Attorneys for Appellee
          Ronald Burkhardt

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I. FACTUAL and PROCEDURAL HISTORY

A. Factual History

This matter comes on before this court on an appeal from
an order entered on September 30, 1998, enforcing a
settlement decree. The background of the case is as follows.
In 1988, the United States sued the State of New Jersey,
the New Jersey Department of Personnel and the New
Jersey Commissioner of Personnel under Title VII of the
Civil Rights Act of 1964, 42 U.S.C. S 2000e et seq., alleging
that the State had violated the federal civil rights of women
and minorities seeking state entry-level law enforcement
positions by using written and physical performance
examinations that had a discriminatory impact on these
groups and did not significantly serve legitimate business
goals. In an amendment to its complaint, the United States
extended the charges of discrimination to include the hiring
of county and municipal entry-level law enforcement
officers as well as state correction officer recruits. The
district court eventually consolidated the United States' suit
with discrimination cases brought by individual plaintiffs
Armadina Tahaney, Donna Roman, Mary Vasquez, Cecilia
Shinn and Carrie Reed against the State and the City of
Newark.

In March 1995, the United States and the State entered
into a consent decree, which the district court approved, to
settle the litigation. The State did not admit any

wrongdoing in the decree and instead expressly denied that it had engaged in the discriminatory hiring practices the United States asserted. The State did agree, however, to use non-discriminatory criteria in selecting law enforcement officers and to discontinue the use of certain employment tests.

As significant here, the consent decree established procedures for ascertaining the alleged victims of discrimination entitled to relief. Eligible individuals received back pay from a $6,500,000 fund, and a retroactive pension benefit, subject to a $625,000 cap on the total amount the State would pay. Additionally, the State was to place eligible individuals on certification lists for appointment to designated law enforcement positions as those positions became available. Eligible women and minorities appointed to state positions received a "remedial seniority date" based on the date they would have been hired but for the State's alleged discrimination. 1 Most importantly for the purposes of this appeal, the decree provided that those individuals who were hired were entitled to "all the emoluments of the job title to which they are appointed, including full retroactive seniority and the extent of pension credit provided under P 29[of the decree]." (Emphasis added.) The court retained jurisdiction to implement the decree.

B. Procedural History

The United States moved to enforce the decree in the district court in February 1998, claiming that the State was violating its terms by failing to provide retroactive salary "step-increases" to the alleged victims of discrimination it had hired. In New Jersey, state agencies determine a state law enforcement officer's salary on a nine-step compensation schedule. Normally, officers are promoted to the next step for every year of satisfactory service, and, as a result, an officer's salary increases with seniority until the

_____

1. The decree did not provide retroactive seniority relief to applicants for
county and municipal positions because providing such relief would have required joining as parties approximately 280 county and municipal civil service jurisdictions that would have been obligated to bear the costs associated with such seniority.

4

highest step is reached. The United States claimed that the salary of individuals hired under the decree should reflect the number of step increases that they would have received based on their determined date of hire, the "remedial seniority date."

The State disagreed. It argued that it was inappropriate to award salary increases for years of satisfactory service when the beneficiaries of the increases had not performed satisfactory service or, indeed, any service at all during the years. The State further argued that the term "seniority" in the consent decree referred only to seniority for purposes of promotions, benefits and layoffs but not for purposes of salary. In support of its position, the State submitted an affidavit from Douglass L. Derry, a senior deputy attorney general who had negotiated the decree on the State's behalf. The affidavit stated in relevant part:"It was the State's understanding that retroactive seniority would be given to priority hires in terms of their rights under New Jersey civil service law, that is for use in promotions, benefits and layoffs. I did not agree on behalf of the State to provide salary increases as part of retroactive seniority." The United States did not submit an affidavit contradicting Derry's statements.

In an opinion dated September 29, 1998, the district court granted the United States' motion to enforce the consent decree and ordered the State to award retroactive step increases to individuals hired under the decree. Treating the decree as a contract, the court indicated that its terms were not ambiguous, and thus its plain language controlled. The court stated that the only limitation on the terms "full seniority" and "emolument" in the decree was the phrase "and the extent of retroactive pension credit provided under P 29 [of the decree]." Applying the interpretative maxim of expressio unis est exclusio alterius (the expression of one thing is the exclusion of the other), the court concluded that the only limitation in the decree on seniority benefits was the capping of pension payments. Thus, the court reasoned that the decree's terms covered salary raises associated with seniority. Inasmuch as step increases in New Jersey are essentially automatic, the court found little reason to conclude that the decree's

5

beneficiaries should not receive such increases retroactively, particularly as those awarded permanent law enforcement positions under the decree were required to complete a "working test period" that allowed the State to evaluate their job performance. The court therefore held that the decree's plain language, when considered in light of New Jersey practices, provided for retroactive salary increases.

The district court made two additional points in its opinion that supported its result. First, it noted that in case law the term "retroactive seniority" traditionally connotes seniority for purposes of determining salary, and thus the parties must have intended to include salary increases when they used that term in the decree. Second, it stated that, all other interpretative factors aside, it had explained in its opinion approving the decree that merit increases were included in the remedial seniority to which the hired individuals were entitled. Thus, the court ruled that the State had to live up to the promises made in the decree and ordered it to award the salary increases to the eligible individuals. Accordingly, it entered the order of September 30, 1998, from which the State has appealed.

II. JURISDICTION and STANDARD OF REVIEW

We are exercising plenary review of this appeal. See Harris v. City of Philadelphia, 137 F.3d 209, 212 (3d Cir. 1998). The district court had original jurisdiction under 42 U.S.C. S 2000e-6(b), 28 U.S.C. S 1343(a), and 28 U.S.C. S 1345, and we have jurisdiction under either 28 U.S.C. S 1291 or 28 U.S.C. S 1292(a)(1) to review the district court's interlocutory order granting the United States' motion to enforce a previously entered consent decree. See Bogard v. Wright, 159 F.3d 1060, 1062 (7th Cir. 1998).

III. DISCUSSION

Initially we set forth a court's function in interpretating a consent decree. As we indicated in Harris,"[w]e discern the scope of a consent decree by examining the language within its four corners." Harris, 137 F.3d at 212 (citing United States v. Armour & Co., 402 U.S. 673, 681-82, 91 S.Ct.

1752, 1757 (1971)); see also Farley v. Philadelphia Hous. Auth., 102 F.3d 697, 700-01 (3d Cir. 1996) (emphasizing importance of focusing on decree's language rather than on court's notion of its purpose). "In so doing, we must not strain the decree's precise terms or impose other terms in an attempt to reconcile the decree with our own conception of its purpose." Harris, 137 F.3d at 212. Further, as consent decrees have many of the attributes of contracts, we interpret them with reference to traditional principles of contract interpretation. See Fox v. United States Dep't of Hous. and Urban Dev., 680 F.2d 315, 319 (3d Cir. 1982) (citing United States v. ITT Continental Baking Co., 420 U.S. 223, 236-38, 95 S.Ct. 926, 932-35 (1975)). Thus, resort to extrinsic evidence is permissible, but only when the decree itself is ambiguous, although circumstances surrounding its formation are always relevant to its meaning. See Fox, 680 F.2d at 319-20. Whether extrinsic evidence is required to interpret a consent decree is itself a question of law subject to plenary review. See id. at 320. Our first task in interpreting a consent decree, therefore, is to determine whether its terms unambiguously cover the dispute in question. See id.

In addressing the question of ambiguity, our focus remains on the contractual language itself, rather than on the parties' subjective understanding of the language. See In re Unisys Corp., 97 F.3d 710, 715 (3d Cir. 1996) (citing Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1009 (3d Cir. 1980)). The parties are bound by the "objective definition of the words they use to express their intent," including the specialized meaning of any legal terms of art. See Unisys, 97 F.3d at 715. Thus, a provision in a decree is ambiguous only when, from an objective standpoint, it is reasonably susceptible to at least two different interpretations. See Hullet v. Towers, Perrin, Forster & Crosby, Inc., 38 F.3d 107, 111 (3d Cir. 1994).

The contractual phrase at issue in this case provides that candidates who are appointed to state jobs under the decree will receive "all the emoluments of the job title to which they are appointed, including full retroactive seniority and the extent of pension credit provided under P 29 [of the decree]." Applying the case law described above,

7

our first step is to determine whether this phrase is ambiguous in light of the context in which the decree was signed and the specialized meaning of any words used. We conclude that regardless of the perspective from which we consider the decree's language, its terms unambiguously guarantee to its beneficiaries a salary that includes retroactive step increases.

As the United States points out, the word "emolument" is defined to include salary received from employment. See Webster's Third New International Dictionary 742 (1986). Thus, the plain language of the decree provides to beneficiaries the salary associated with their job title, including "full retroactive seniority." The State does not dispute that seniority is a factor in determining the salary of state employees in the positions involved here, for it recognizes that the State awards salary step increases based on each year of satisfactory service and thus the increases are essentially automatic. See Supp. App. 86 (statement by New Jersey's counsel at oral argument that as "a practical matter," there are "very few" individuals who do not receive the step increase). Given this factual context, the decree's guarantee of a salary that includes full retroactive seniority is reasonably susceptible to only one meaning: that beneficiaries will receive the same salary as other employees with the same seniority date.[2]

_____

2. Our result here is not inconsistent with our recent opinion in Fultz v. Dunn, 165 F.3d 215 (3d Cir. 1998), cert. denied, 119 S.Ct. 2342 (1999), which involved the calculation of seniority in the implementation of a settlement agreement of earlier litigation providing for reemployment of a terminated employee. There we held that the terminated employee could not be successful in a First Amendment retaliation action challenging the seniority calculation because the applicable state regulations required the challenged calculations. We also indicated that the reemployed employee "did not bargain for recognition of seniority based on his terminated employment in the settlement agreement." Id. at 219. Thus, if the defendant in Fultz had invented a term to recapture the plaintiff 's seniority, "he would have been giving [him] more than he bargained for when he came to an agreement" settling the underlying action. Id. at 221. Here the situation is different, as the order of September 30, 1998, merely gave the beneficiaries of the consent decree the benefits agreed upon.

8

Considering the phrase "full retroactive seniority" in isolation leads to the same result. This phrase is a term of art that the Supreme Court discussed in Franks v. Bowman Transportation Co., 424 U.S. 747, 96 S.Ct. 1251 (1976). In Franks, the Court ruled that Title VII permits an award of retroactive seniority to individuals who had not been hired because of discrimination. See id. at 779-80, 96 S.Ct. at 1271-72. In its opinion, the Court used the term "retroactive seniority" to describe both "competitive" seniority, which is used to allocate scarce resources such as promotions and retentions, and "benefit" seniority, which assigns non-competitive benefits that are tied to years of service, such as pensions, vacations and salary. See id. at 766-67, 96 S.Ct. at 1265; see also United States v. City of Hialeah, 140 F.3d 968, 972 (11th Cir. 1998) (including compensation based on employee's "longevity" in definition of benefit seniority). When the Supreme Court wished to distinguish between the two types of seniority, it did so specifically. See Franks, 424 U.S. at 773 n.33, 96 S.Ct. at 1268 n.33. Based on the established meaning of "retroactive seniority," the only reasonable interpretation of the decree's provision for "full retroactive seniority" is that it encompasses both types of seniority, competitive and benefit. See ITT Continental, 420 U.S. at 238, 95 S.Ct. at 935 (stating that in interpreting a decree's language, it is appropriate to consider "any technical meaning words used may have had to the parties"). Because in New Jersey an employee's seniority does determine the salary benefit, we interpret the decree to include the salary step increases.[3]

The context in which the district court entered the decree provides additional support for interpreting it to guarantee beneficiaries retroactive step increases in their salaries. In its comprehensive opinion approving the consent decree after a fairness hearing, the district court stated:

_____

3. At oral argument before us, the State argued that we must ascertain the parties' intent in coming to the settlement and agreeing upon the disputed provision. We agree with that contention and thus we do not doubt that if it could be demonstrated that the parties did not intend a term of art to have the meaning that it had in another context, their intent should be honored. The State's problem is that it did not make that showing.

9

"Retroactive seniority was not provided for persons who applied for county and municipal jobs, in part, because providing such relief would have required joining as parties and reaching settlement with approximately 280 county and municipal civil service jurisdictions that would have borne the costs associated with retroactive seniority, e.g., salary increases and benefits based on years of service." (Emphasis added.) This statement clearly demonstrates the court's understanding that the retroactive seniority provided in the decree extended to salary increases. Further, in discussing the objections made by individuals at the fairness hearing to the seniority granted in the decree, the court noted that most objections did not relate to "benefit" seniority, such as "merit increases," but to "competitive" seniority, such as the order of promotions or layoffs. Thus, the court again highlighted its understanding that merit increases were part of the retroactive seniority awarded to individuals hired under the decree. Neither of the parties objected to the court's comments. Given these statements in the district court's opinion, the circumstances surrounding the formal entry of the decree also point to interpreting the phrase "full retroactive seniority" to include retroactive step increases.

The State's attempts to inject ambiguity into the decree's language are unconvincing. The State first claims that step increases cannot be imposed retroactively because the decree does not provide specifically for such increases. This argument, however, is not persuasive. The decree also does not provide specifically for vacation time based on the retroactive seniority date, but New Jersey does not dispute that appointees hired under the decree are entitled to such benefits. The State's claim that the decree provides for some types of seniority benefits but not others is not supported by the decree's language. The decree states that beneficiaries will receive "full retroactive seniority;" the only exception to "full" seniority benefits in the decree is the cap on pension benefits in paragraph 29 of the decree. Thus, there is no basis in the decree's terms for distinguishing between types of seniority benefits other than pension benefits.

The State next contends that salary increases are not part of seniority because they are not an entitlement;

10

instead, it claims that the State awards increases only after successful completion of years of service. As we explained above, however, the State conceded at oral argument in the district court that as a practical matter it rarely denies step increases to state employees. It did not retreat from that position on this appeal. See also County of Bergen, 23 N.J. Pub. Employee Rep. P 28017 (1996) (describing step increases that are "based only upon the satisfactory completion of another year of service" as "automatic"), recommendation of dismissal adopted, 23 N.J. Pub. Employee Rep. P 28136 (1997). Clearly, then, the district court correctly determined that in New Jersey, a step increase is an entitlement that automatically accrues with seniority. See Galloway Township Bd. of Ed. v. Galloway Township Ed. Ass'n, 393 A.2d 218, 230-32 (N.J. 1978).

Moreover, as the district court pointed out, the State has no reason to conclude that individuals hired under the decree would be those unusual employees who performed their jobs unsatisfactorily. All individuals who received permanent employment offers under the decree first had to complete a "working test period." Under New Jersey law, this period is "a part of the examination process. . . during which time the work performance and conduct of the employee is evaluated to determine if permanent status is merited." N.J. Admin. Code tit. 4A, S 1-1.3 (1999). Thus, the individuals employed demonstrated an ability to perform their jobs adequately. There is therefore no reason based on the record to conclude that the beneficiaries of the decree should be denied the step increases that they would have received if they had been hired on their retroactive seniority dates.

Next, the State argues that awarding the step increases would violate the parties' agreement in the decree limiting the State's monetary liability to $6.5 million in back pay and $625,000 in pension benefits. According to the State, this $7.125 million sum was the only monetary compensation that it agreed to pay; therefore, it claims that awarding retroactive step increases would violate the decree. In fact, however, the State did agree to pay additional funds to the decree's beneficiaries in the form of salaries to those hired, and it is not claiming that salaries

11

without the step increases are "extra" compensation. Because the United States merely is protesting the amount of salary paid rather than requesting additional funds for purposes other than salary, interpreting the decree to require a salary that reflects the retroactive seniority date would not violate the consent decree's terms.

The State also contends that the district court erroneously ignored its undisputed evidence in Derry's affidavit that the State never intended to provide retroactive step increases to individuals hired under the consent decree. But as the United States correctly points out, the district court could not consider such evidence once it determined that the decree's language was clear. Our case law plainly establishes that a court can consult extrinsic evidence in interpreting a consent decree only when the language of the decree is ambiguous. See Fox, 680 F.2d at 319. When the decree's language is not reasonably susceptible to two different meanings, the court must determine the parties' intent from the language itself, not by the subjective impressions of the parties. See Hullett, 38 F.3d at 111. Thus, the district court correctly refused to consider the affidavit given the lack of ambiguity in the decree's terms.

The same analysis befalls the State's claim that the district court should have interpreted the language of the decree against its drafter, the United States. Like extrinsic evidence, courts turn to this interpretative aid only after concluding that a document's terms are ambiguous. See In re Nelson Co., 959 F.2d 1260, 1263-64 (3d Cir. 1992). Thus, the court did not err by failing to invoke this principle of contract interpretation. In this regard, we point out that the State is a sophisticated litigant that at the time of the settlement was dealing with its own procedures and regulations. In these circumstances, we question whether a court should place much weight on a contention that it should interpret the document at issue against its drafter.

Finally, we reject the State's argument that the decree cannot be interpreted to provide for retroactive step increases as such increases would violate a state administrative regulation. The New Jersey Administrative Code provides that a new employee may be placed at no

12

higher than the fourth step of the salary range for his or her title. See N.J. Admin. Code tit. 4A,S 3-4.4 (a) (1999). Because some of the individuals hired under the decree had retroactive seniority dates more than four years in the past, providing them with retroactive step increases would have required New Jersey to place them at higher than the fourth step of the relevant salary range. The State argues that it would not have agreed to violate its own regulation in this manner without declaring its intent to do so explicitly in the decree.

As the United States points out, however, individuals hired under the decree were not "new employees" in the sense intended by the regulation. The regulation states that a new employee "is one who has had no immediate prior State service with that appointing authority." Id. But the beneficiaries of the decree were deemed, for most intents and purposes, to have been hired in the past. The United States therefore contends that individuals hired under the decree should receive the salary that correlates to the years of service assumed by their retroactive seniority date. Thus, to rule in favor of the United States' position requires only paying the appointees under the decree the same salary as other individuals with an equal number of "years" on the job. We do not regard this interpretation as violating the administrative regulation highlighted by the State. 4

IV. CONCLUSION

In sum we therefore reject all of the State's arguments for finding ambiguity in the consent decree. Instead, we conclude that the district court correctly held that the consent decree, by guaranteeing "full retroactive seniority" to those hired, unambiguously guaranteed to them retroactive salary increases that accompany seniority under

_____

4. Even though we conclude that the decree is unambiguous, and thus no hearing to consider extrinsic evidence was necessary, we note that the State may have waived the right to request such a hearing in any case. At oral argument before the district court, the State's attorney passed on the court's offer to hold a hearing if counsel felt that the decree was ambiguous. The State's attorney instead replied: "I'm not sure that I'm arguing that it's an ambiguous contract."

13

New Jersey procedures. Accordingly, the order of September 30, 1999, will be affirmed.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

14