

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-20-2007

# Al C Rinaldi Inc v. Bach Rock Music Sch

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2354

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Al C Rinaldi Inc v. Bach Rock Music Sch" (2007). *2007 Decisions.* Paper 1239.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1239

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT-PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


Case No: 06-2354

AL C. RINALDI, INC.;
MUSIC UNLIMITED, INC.;
CHOPIN PIANO & ORGAN, INC.;
CAPITOL AREA PIANO COMPANY, LLC,
t/a Jacobs Music Company

v.

BACH TO ROCK MUSIC SCHOOL, INC.,
t/a East Coast Piano Liquidators;
BACH TO ROCK MUSIC; EAST COAST PIANO
LIQUIDATORS


Al C. Rinaldi, Inc.,
Music Unlimited, Inc.,
Chopin Piano & Organ, Inc.,

Appellants

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No.: 00-cv-05477
District Judge: Honorable Stewart Dalzell

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 11, 2007

(Filed: April 20, 2007)

_____

OPINION

_____

HANSEN, *Circuit Judge*.

Appellants Al C. Rinaldi, Inc., Music Unlimited, Inc., and Chopin Piano & Organ, Inc. (collectively "Jacobs Music") appeal the District Court's denial of their motion for civil contempt. Jacobs Music alleged that Bach to Rock Music School, Inc. ("Bach to Rock") violated the provisions of a prior consent order that imposed a permanent injunction prohibiting Bach to Rock from engaging in certain advertising and sales practices. At issue on appeal is whether the District Court correctly concluded that the scope of that prior order did not reach Bach to Rock's conduct of advertising over the Internet on its web site.

Because this is a non-precedential opinion and we write only for the parties, our factual recitation is brief. Jacobs Music is a piano and other keyboard instrument retailer, and Bach to Rock is a competitor in the business of selling pianos to the general public. Jacobs Music originally brought suit in 2000 against Bach to Rock, asserting causes of action for false and misleading advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a), and state common law claims of unfair competition, trade disparagement and tortious interference

[*]The Honorable David R. Hansen, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

with business relations. Jacobs Music alleged that Bach to Rock sought to attract customers to its retail stores and other sales events claiming to be a piano liquidator offering brand name pianos at liquidation prices, sometimes up to 80% off the list price. Jacobs Music alleged that these claims were false and misleading because Bach to Rock stocked few pianos of the brands named and the new pianos available were lower quality instruments. Jacobs Music also alleged that Bach to Rock's practice was to lure potential customers to its sales venues with misleading advertising and then pressure customers to purchase the low quality instruments without comparison shopping by misrepresenting both the quality of the instruments and the limited time period during which the instruments would be available at the special price offered.

The parties reached a Settlement Agreement and Mutual Release resolving all disputed matters related to these claims and requiring the entry of a consent order prohibiting certain enumerated sales and advertising practices. The District Court entered the Consent Order reflecting the negotiated agreement on April 2, 2001. The Consent Order lists 21 separate paragraphs enumerating the prohibited conduct and provides for liquidated damages in the amount of $10,000 for each advertisement that violates its terms. The District Court retained jurisdiction over the action for purposes of enforcing the terms of the Consent Order.

Based on violations of the Consent Order, Jacobs Music obtained a civil contempt order against Bach to Rock and a judgment for $60,000 in liquidated damages on August 26,

2003. *See Al C. Rinaldi, Inc. v. Bach to Rock Music Sch., Inc.*, 279 F. Supp. 2d 624 (E.D. Pa. 2003). On January 19, 2006, and supplemented on February 7, 2006, Jacobs Music filed another motion for civil contempt and to recover liquidated damages, asserting that Bach to Rock was publishing the same deceptive advertisements on its web site. Bach to Rock argued that the Consent Order does not apply to online advertising.[1] The District Court concluded that the Consent Order does not apply to online advertising and denied the motion for contempt. Jacobs Music appeals, and we affirm the well-reasoned opinion of the District Court.

I.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). We exercise jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and § 1292(a)(1). We review the denial of a motion for contempt for an abuse of discretion, *Holland v. New Jersey Dep't of Corrections*, 246 F.3d 267, 288 n. 18 (3d Cir. 2001), but "a district court's construction and interpretation of a consent decree is subject to straightforward plenary or de novo review," *id.* at 277. If a district court misconstrues a consent decree, it commits legal error which

---

[1]Jacobs Music filed a second supplemental motion for contempt on March 6, 2006, citing evidence that Bach to Rock had also supplemented the online advertising by distributing the same advertisements through direct mailings or advertisements in local newspapers. The district court denied that motion for contempt on April 21, 2006, without prejudice to its reassertion after this appeal is concluded. (App. at 26.)

4

amounts to an abuse of discretion in granting or denying a motion for contempt. *See McDowell v. Philadelphia Hous. Auth. (PHA)*, 423 F.3d 233, 238 (3d Cir. 2005), *cert. denied*, 126 S. Ct. 1910 (2006) ("An abuse of discretion may occur as a result of an errant conclusion of law, an improper application of law to fact, or a clearly erroneous finding of fact."); *see also Holland*, 246 F.3d at 288 n.18 (same).

II.

Consent decrees bear many of the attributes of contracts, and thus, "we interpret them with reference to traditional principles of contract interpretation." *United States v. New Jersey*, 194 F.3d 426, 430 (3d Cir. 1999). "'[W]e discern the scope of a consent decree by examining the language within its four corners,'" not attempting to strain the terms or impose additional terms "'to reconcile the decree with our own conception of its purpose.'" *Id.* (quoting *Harris v. City of Philadelphia*, 137 F.3d 209, 212 (3d Cir. 1998)). "The parties are bound by the objective definition of the words they use to express their intent." *Id.* (internal marks omitted). While extrinsic evidence may be consulted to construe an ambiguous term, "[o]ur first task . . . is to determine whether its terms unambiguously cover the dispute in question." *Id.*

The Consent Order contains 21 specific paragraphs detailing the prohibited conduct, 13 of which begin with the words "[a]dvertising or otherwise promoting" certain sales practices. For example, the prohibitions include "[a]dvertising or otherwise promoting" sale prices or discounts without a specific price range, percentage discounts from Bach to Rock's

suggested list price or any other published price list that is not recognized as an authoritative source of retail prices, or that the stated sale prices will be available for only a limited time. (App. at 27-29.)  The prohibited conduct is directly followed by a liquidated damages provision enumerating the types of media that are subject to liquidated damages and explaining how to tally the occurrence of prohibited conduct to properly calculate the amount of liquidated damages:

> [S]hould the Court determine upon Motion by Jacobs Music Co. that Bach to Rock has published, circulated, distributed or otherwise disseminated . . . any television or radio advertisement, newspaper or magazine advertisement, promotion, circular or other document that is inconsistent with any of the terms of this Order, defendant shall  . . . be ordered to pay liquidated damages to Plaintiffs in the amount of ten thousand dollars ($10,000) per television or radio station on which or newspaper and/or magazine in which the advertisement appears and/or version of the promotion, circular or other document that was utilized.  For purposes of computation, the $10,000 sum shall apply only to the specific newspaper, magazine, television or radio station and not to the number of individual copies or broadcasts thereof.

(*Id.* at 29-30.)

Jacobs Music argues that the District Court erred in concluding that the scope of the Consent Order does not reach Internet online advertising practices.  Jacobs Music does not argue that the Consent Order is ambiguous or that any parol evidence indicates the parties actually intended the agreement to cover Internet advertising activity.

Nowhere does the Consent Order mention the Internet or advertising on web sites, though other types of media are specifically named.  The words within the four corners of the Consent Order were extensively negotiated, and reading them together, it is apparent on

6

the face of the decree that the liquidated damages provision–which is specific to violations in television, radio, newspapers, or magazines–is intended to apply to any advertising "that is inconsistent with any of the terms of this Order." (I*d.* at 29.)  More explicitly, it states that "[t]his liquidated damages provision is intended to compensate plaintiffs for losses they may sustain from *any* violation of this Order." (*Id.* at 30 (emphasis added).)  Thus, the prohibited conduct in this case cannot be viewed in isolation from the terms limiting the liquidated damages to advertising in the types of media specified.

As the District Court noted:

> In the liquidated damages provision, the parties' experienced counsel, working under the aegis of Judge Hart, agreed to a detailed description of how liquidated damages would be calculated for each violation.  They also painstakingly listed the forms of media to which such damages would apply.  Notably, the parties specified that publications in a "television or radio advertisement, newspaper or magazine advertisement, promotion, circular or other document" were subject to liquidated damages if those publications were "inconsistent with any of the terms of this Order."  Consent Order at 3.  Thus, the liquidated damages provision must by its terms be read together with the prohibitions section.

(*Id.* at 10.)  The District Court aptly noted that the Internet "was alive and very well" at the time of the negotiations in 2001 and that the Internet has been recognized as a "unique and wholly new medium of worldwide human communication." (*Id.* at 12 (internal marks and citation omitted).)  Yet, the Internet is not listed in the Consent Order along with the more traditional types of media.  We agree with the District Court that to construe the generic word "document" to include online advertising in these circumstances would unduly expand the scope of the Consent Order as written.  Additionally, the District Court carefully noted that

7

this construction of the Consent Order "do[es] not absolve Bach to Rock from any obligations it has to Jacobs Music under the Lanham Act." (*Id.* at 15-16.)

We find no legal error in the well-reasoned opinion of the District Court and conclude that the District Court did not abuse its discretion in denying the motion for civil contempt. Accordingly, we will affirm the judgment of the District Court.