**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-2966
_____

UNITED STATES OF AMERICA

v.

ROBERT BRACE; ROBERT BRACE FARMS,
a Pennsylvania Corporation,

       Appellants
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 1-90-cv-00229)
District Judge: Honorable Susan Paradise Baxter
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1
on October 4, 2022

Before: CHAGARES, *Chief Judge*, SHWARTZ, and SCIRICA, *Circuit Judges.*

(Filed: January 6, 2023)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

This case arises from a consent decree that Robert Brace and Robert Brace Farms, Inc. (collectively, "Appellants") entered into with the United States in 1996. Appellants challenge the District Court's decision to grant, in part, the United States' motion to enforce the consent decree, to decline to estop the Government from enforcing the consent decree, and to deny Appellants' motion to vacate or modify the consent decree. Because Appellants' conduct unambiguously violated the consent decree, the court did not abuse its discretion in rejecting Appellants' equitable estoppel defense and denying their motion to vacate or modify the consent decree. We will affirm.

I.

In 1990, the United States brought an enforcement action against Appellants for alleged violations of the Clean Water Act. Before that litigation was fully resolved, Appellants and the Government entered into a consent decree. Among other provisions, the consent decree permanently enjoined Appellants "from discharging any pollutants (including dredged or fill material)" into an approximately 30-acre wetlands site on a piece of their property called the Murphy Farm. JA141. The wetlands site covered by the consent decree was depicted and delineated in a hand-drawn map attached to the consent decree. The consent decree also incorporated a wetlands restoration plan, which required Appellants to perform specific tasks to "restore the hydrologic regime" to the wetlands site. JA146. Specifically, "[i]n order to restore the hydrology to the area," the consent decree mandated that Appellants disable and remove a drainage tile system located in the wetlands, fill in two surface ditches, and construct a check dam in a specific location. The

2

consent decree specified that "[a]ny stipulated modification of [the] Consent Decree must be in writing, signed by the parties, and approved by [the] Court." JA144.

Although Appellants initially complied with the terms of the consent decree, the Government subsequently concluded Appellants were violating it. In January 2016, the Government provided written notice to Appellants that they had violated the consent decree by discharging dredged and fill material into approximately 18 acres of the wetlands site, by installing drainage tile in the wetlands site, and by removing the check dam required under the consent decree. After attempts to reach a negotiated resolution failed, the Government moved to enforce the consent decree. Appellants opposed the Government's motion, arguing, in part, that the consent decree was ambiguous and the allegedly violative conduct was expressly authorized by Government officials during on-site visits to the Murphy Farm. Appellants also moved to vacate or modify the consent decree.

In an 86-page opinion, the District Court granted, in part, the Government's motion to enforce the consent decree. The court found, by clear and convincing evidence, that Appellants violated the consent decree by installing tile drains, excavating at least one ditch, and discharging dredged or fill material into approximately 18 acres of the wetlands site as a result of their clearing, plowing, and corn-planting activities. The court also found by clear and convincing evidence that Appellants were in violation of the consent decree because the check dam was not positioned in the location mandated by the consent decree. The court rejected Appellants' equitable estoppel defense and denied their motion to vacate or modify the consent decree. Appellants timely appealed.

II.[1]

Appellants contend the court erred in (1) concluding they violated the consent decree, (2) refusing to estop the Government from enforcing the consent decree, and (3) denying their motion to vacate or modify the consent decree.

A.[2]

Appellants argue the court erred in concluding they violated the consent decree. Appellants' main contention is that the consent decree is facially ambiguous and, accordingly, the court should have construed it in Appellants' favor. Because the consent

---

[1] The parties' initial dispute arose under the Clean Water Act. Accordingly, the District Court had subject matter jurisdiction under 28 U.S.C. § 1331. When the parties resolved that dispute by entering into a consent decree, the court retained jurisdiction to enforce, interpret, and modify the consent decree. *See Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 440 (2004); *Holland v. N.J. Dep't of Corr.*, 246 F.3d 267, 281–83 & n.15 (3d Cir. 2001). We exercise jurisdiction under 28 U.S.C. § 1292(a)(1). *See Harris v. City of Phila.*, 47 F.3d 1333, 1338 (3d Cir. 1995).

[2] In deciding the Government's motion to enforce the consent decree, the District Court referenced the standard for civil contempt, noting that civil contempt requires clear and convincing evidence of (1) a valid court order, (2) the party's knowledge of that order, and (3) disobedience, and found that the evidence supported each factor. It did not, however, hold Appellants in contempt. Therefore, we do not analyze the District Court's order as one for civil contempt. *See Harris*, 47 F.3d at 1322 (noting that "notwithstanding the district court's reference to contempt, we should not analyze the . . . order as an order for civil contempt [because] [t]here is no explicit finding of contempt," rather a finding that the party disregarded the consent decree). Rather, we have before us an order granting a motion to enforce a judicial order and denying a motion to vacate that order. We review a district court's order enforcing, vacating, or modifying its own orders, including consent decrees, for abuse of discretion. *See Holland*, 246 F.3d at 281; *see also Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 201 (3d Cir. 2012) (holding appellant must show the court's decision was "arbitrary, fanciful or clearly unreasonable"). We review legal determinations, including interpretation of the consent decree, de novo, *see Holland*, 246 F.3d at 281, and we review any factual findings for clear error, *see United States v. Brace*, 41 F.3d 117, 122 (3d Cir. 1994).

4

decree unambiguously prohibited Appellants' conduct, the court properly determined that Appellants violated it.

We review a district court's interpretation of a consent decree de novo. *Holland v. N.J. Dep't of Corr.*, 246 F.3d 267, 278 (3d Cir. 2001). "[A]s consent decrees have many of the attributes of contracts, we interpret them with reference to traditional principles of contract interpretation." *United States v. New Jersey*, 194 F.3d 426, 430 (3d Cir. 1999). Accordingly, "[w]e discern the scope of a consent decree by examining the language within its four corners," and "we must not strain the decree's precise terms or impose other terms in an attempt to reconcile the decree with our own conception of its purpose." *Harris v. City of Phila.*, 137 F.3d 209, 212 (3d Cir. 1998). Resort to extrinsic evidence is permissible "only when the decree itself is ambiguous." *New Jersey*, 194 F.3d at 430. "[A] provision in a decree is ambiguous only when, from an objective standpoint, it is reasonably susceptible to at least two different interpretations." *Id.*

Here, Appellants assert the consent decree is facially ambiguous because the area covered by the consent decree is only an approximation and the consent decree does not define the term "hydrologic regime." Appellants contend that, as a result, it is unclear whether their conduct on the Murphy Farm—which included installing tile drains, excavating at least one ditch, and planting corn—violated the consent decree. Thus, the court should have construed these ambiguities in Appellants' favor and concluded that their conduct did not violate the consent decree. We are not persuaded.

First, in unambiguous terms, the consent decree permanently enjoined Appellants "from discharging any pollutants (including dredged or fill material) into the

approximately 30 acre wetland site" on the Murphy Farm. JA141. Although Appellants are correct that the map attached to the consent decree that portrayed the Murphy Farm and delineated the wetlands site was hand drawn and explicitly stated that all locations on the map were approximations, that is not dispositive. Through their clearing, plowing, and planting activities, Appellants discharged dredged or fill material into approximately 18 acres of the 30-acre wetlands site. Any ambiguity in the precise borders and boundaries of the wetlands site cannot reasonably account for the prohibited discharges in such a wide-ranging area. Accordingly, the consent decree unambiguously prohibited Appellants' clearing, plowing, and planting activities, and the court properly concluded Appellants violated the consent decree by engaging in those activities.

Second, the consent decree incorporated a wetlands restoration plan. The primary objective of the plan was to "restore the hydrologic regime" to the wetlands. JA146. Although Appellants are correct that the plan did not define "hydrologic regime," it unambiguously provided that "[i]n order to restore the hydrology to the area, the drainage tile system currently located in the wetlands is to be disabled, surface ditches filled in, and a check dam constructed." JA146. Accordingly, the plan detailed specific tasks Appellants were required to perform to establish and maintain the hydrological regime mandated by the plan. Appellants initially complied with these requirements, but subsequently installed tile drainage in the same places from which they had previously

removed it, excavated at least one ditch in a central location in the wetlands,[3] and positioned the check dam in a different location than that required by the plan.[4] This conduct was contrary to the remedial measures mandated by the plan. Therefore, the only reasonable interpretation of the plan is that such conduct was prohibited because it would disturb the hydrological regime required by the plan and return the hydrology of the wetlands to its previously problematic state. As a result, the plan unambiguously prohibited Appellants' activities—reinstalling tile drainage, excavating a ditch, and failing to install a check dam in the specified location. *See New Jersey*, 194 F.3d at 430. Accordingly, the court properly determined that Appellants violated the plan and, in turn, the consent decree.

Because the consent decree unambiguously prohibited Appellants' conduct, the court did not abuse its discretion in granting, in part, the Government's motion to enforce the consent decree. *See Holland*, 246 F.3d at 281.

B.

Appellants argue the court erred in refusing to estop the Government from enforcing the consent decree. Appellants contend the court should have estopped the Government from enforcing the consent decree because the Government's "repeated,

---

[3] Because the ditch was excavated in a central location in the wetlands, this violation of the consent decree cannot be explained by any ambiguity in the precise boundaries of the 30-acre wetlands site.

[4] Although the Government agrees that Appellants initially complied with the wetlands restoration plan, it is unclear whether the check dam was originally installed at the proper location and then moved to a different location, as the Government contends, or whether the check dam has always been at a different location than that specified in the plan.

material misrepresentations easily satisf[ied] estoppel's traditional requirements and constitute[d] affirmative misconduct as well." Appellants' Br. 23. Because the court did not abuse its discretion in rejecting Appellants' estoppel defense, we will affirm. *See Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 162 (3d Cir. 2011).

"Parties attempting to estop another private party must establish that they relied to their detriment on their adversary's misrepresentation and that such reliance was reasonable because they neither knew nor should have known the adversary's conduct was misleading." *Fredericks v. Comm'r*, 126 F.3d 433, 438 (3d Cir. 1997). When a party attempts to estop the government, there is an additional burden—the party must also establish some affirmative misconduct on the part of government officials. *Id.* We review a district court's decision whether to invoke equitable estoppel for abuse of discretion. *See Meyer*, 648 F.3d at 162; *Bechtel v. Robinson*, 886 F.2d 644, 647 (3d Cir. 1989).

Here, the court thoroughly considered Appellants' estoppel defense. The court concluded that it failed because any reliance on government officials' alleged verbal authorization to perform the subject activities in the wetlands site was not reasonable and Appellants failed to establish any affirmative misconduct by a government official. Appellants contend that their reliance on verbal authorization from the officials was reasonable because the consent decree was ambiguous. But, as discussed previously, the consent decree unambiguously prohibited Appellants' conduct, and the consent decree also unambiguously prohibited any modifications without court approval. Accordingly, even if we assume that government officials expressly authorized Appellants to reinstall tile drain, plant corn, and perform the other subject activities in the wetlands site, the

court did not err in concluding that Appellants' reliance on that authorization was not reasonable. *See Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 59 n.10 (1984).

Similarly, the court did not err in concluding that Appellants failed to establish any affirmative misconduct by government officials. Although Appellants contend that government officials acted with reckless disregard for the truth when they allegedly authorized Appellants to engage in activities prohibited by the consent decree, the court did not err when it concluded that—to the extent government officials even authorized prohibited conduct—the officials were merely negligent. Because mere negligence does not qualify as affirmative misconduct, the court properly determined that estoppel is inappropriate here.[5] *See United States v. Pepperman*, 976 F.2d 123, 131 (3d Cir. 1992).

Accordingly, the court did not abuse its discretion in rejecting Appellants' equitable estoppel defense.

## C.

Appellants argue the court abused its discretion in denying their motion to vacate or modify the consent decree. Appellants contend the court should have vacated or modified the consent decree because "the government's repeated, material misrepresentations on issues surrounding the consent decree" have made it unworkable

---

[5] Appellants also argue that the Government committed affirmative misconduct when it broke its promise that it would not penalize Appellants for the prohibited conduct in which they engaged in reliance on government officials' erroneous authorization. This argument is a nonstarter, though, because the Government promised only to not penalize Appellants for any sediment removal from Elk Creek and its tributaries that they performed based on government officials' representation that such work was permissible, and the current enforcement action does not concern that conduct.

and its continued enforcement inequitable. Appellants' Br. 31. Because the court thoroughly considered Appellants' motion and did not abuse its discretion in denying the motion, we will affirm. *See Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 201 (3d Cir. 2012).

Federal Rule of Civil Procedure 60(b)(5) provides that a "court may relieve a party or its legal representative from a final judgment, order, or proceeding . . . [if] applying it prospectively is no longer equitable." "[A] party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992). To obtain modification or vacatur, the party "must establish at least one of the following four factors by a preponderance of the evidence . . . : (1) a significant change in factual conditions; (2) a significant change in law; (3) that 'a decree proves unworkable because of unforeseen obstacles'; or (4) that 'enforcement of the decree without modification would be detrimental to the public interest.'" *Democratic Nat'l Comm.*, 673 F.3d at 202 (quoting *Rufo*, 502 U.S. at 384). A district court's decision regarding whether to vacate or modify a consent decree is reviewed for abuse of discretion. *Id.* at 201.

Here, Appellants have failed to demonstrate that the court's decision to deny their motion to vacate or modify the consent decree was an abuse of discretion. Indeed, the court thoroughly considered Appellants' arguments regarding changed factual and legal circumstances and persuasively articulated its reasons for rejecting those arguments and finding that none of the alleged changes rendered continued enforcement of the consent decree unworkable or inequitable. The court also weighed the hardship to Appellants of

10

continued enforcement of the consent decree against the benefits of its continued enforcement, and the court reasonably concluded that the environmental benefits derived from continued enforcement of the consent decree outweighed any hardship to Appellants from such enforcement. Accordingly, the court did not abuse its discretion in denying Appellants' motion to vacate or modify the consent decree.[6]

III.

For the foregoing reasons, we will affirm the judgment of the court.

---

[6] The court also denied Appellants' motion to vacate or modify the consent decree on the ground that it was untimely. *See* Fed. R. Civ. P. 60(c)(1) ("A motion under Rule 60(b) must be made within a reasonable time."). Because we will affirm the court's decision to deny the motion on its merits, we need not—and do not—address the court's determination that the motion was untimely. *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).