

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-23-2003

# Kean v. Adler

Precedential or Non-Precedential: Non-Precedential

Docket 03-1301

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Kean v. Adler" (2003). *2003 Decisions.* Paper 530.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/530

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEAL
FOR THE THIRD CIRCUIT

No. 03-1301

JAMES KEAN; ERNEST KEAN; ALVA MARSH;
WARREN MARSH;
JEWEL MARSH-MOOLENAR; PATRICIA LOONEY

v.

LEILA ADLER; IRMA CALIJOHNI; HALLIE ORTIZ;
OUIDA NELSON; JOSEPH ADLER; VALENTINO NELSON;
NELINDA NELSON; UNITED STATES OF AMERICA;
THE NATIONAL PARK SERVICE;
CAROLYN ORTIZ, Individually and as Executor of
the Estate of Hallie Ortiz

United States of America and
The National Park Service,

Appellants

On Appeal from the District Court
of the Virgin Islands
(D.C. Civil No. 98-cv-00176)
District Judge: Hon. Thomas K. Moore

Argued April 30, 2003

BEFORE: ROTH, MC KEE and COWEN, Circuit Judges

(Filed:   May 23, 2003)

Todd S. Kim, Esq. (Argued)
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 23795
L'Enfant Plaza Station
Washington, DC 20026

    Counsel for Appellants

Richard R. Knoepfel, Esq.
Dudley, Clark & Chan
9720 Estate Thomas, Suite 1
Charlotte Amalie, St. Thomas
USVI, 00802

    Counsel for Appellees James Kean; Ernest Kean; Alva Marsh;
    Warren Marsh; Jewel Marsh-Moolenar and Patricia Looney

Carol A. Rich, Esq. (Argued)
Campbell, Arellano & Rich
4 A & B Kongens Gade
P.O. Box 11899
Charlotte Amalie, St. Thomas
USVI, 00801

    Counsel for Appellees Hallie Ortiz and Carolyn Ortiz

Alan D. Smith, Esq.
Hodge & Francois
1340 Taarnederg Road
Charlotte Amalie, St. Thomas
USVI, 00802

    Counsel for Appellees Ouida Nelson; Valentino Nelson;
    and Nelinda Nelson

---

OPINION

---

COWEN, Circuit Judge.

I.

A brief overview of the facts of this case is helpful to understanding the procedural decision of the District Court challenged in this appeal. Harvey Monroe Marsh ("Marsh") owned a large area of property in St. John. In 1961, he executed a deed (the "1961 Deed") conveying approximately 376 acres of this land (the "Property") to a group of eleven life tenants, with the remainder in fee to his grandchildren living or in being at his death. Marsh reserved himself a life estate in the property, along with the right to sell parcels of the property, subject to certain conditions.

In 1965, Marsh conveyed approximately three acres of the Property to Hallie Ortiz (the "1965 Deed"). Hallie died in 1999 and left this three-acre interest (the "three-acre parcel") to her daughter Carolyn Ortiz. Marsh died in 1971, with four of the original grantees still holding life estates in the Property. In addition, eleven grandchildren alive or in being held remainder interests. Hallie Ortiz was one of the four life tenants, and her daughter Carolyn Ortiz, one of the eleven remaindermen.

In 1970, three of the grandchildren—Carolyn Ortiz, Ronald Ortiz, and Yvonne Hopper—conveyed their remainder interests to the National Park Foundation (the "1970 Indentures"). In 1975, the National Park Foundation conveyed this three-elevenths interest in the Property to the United States for eventual inclusion in the Virgin Islands National Park.

3

II.

This action commenced in the Territorial Court in 1998 when six of Marsh's grandchildren holding six-elevenths of the remainder interests in the Property filed suit against the four remaining life tenants under the 1961 Deed, two other grandchildren holding a combined two-elevenths remainder interest, and various other parties including the United States.[1] These plaintiffs mentioned the three-acre parcel conveyed to Hallie Ortiz under the 1965 Deed, but did not challenge her ownership of the property. The United States removed the action and filed an answer. In relevant part, the United States' answer admitted that Hallie Ortiz owned the three-acre parcel conveyed by the 1965 Deed, and that the parcel was not subject to the litigation. App. at 46, ¶ 12.

In May 2000, the plaintiffs filed an amended complaint adding Carolyn Ortiz as a defendant. The amended complaint alleged that the 1965 Deed to Hallie Ortiz was invalid, and that the three-acre parcel now held by Carolyn[2] was subject to the interests created by the 1961 Deed. In August 2000, Carolyn Ortiz answered the amended complaint, and asserted counterclaims against the plaintiffs, and cross-claims against the defendants, including the United States. Carolyn's pleadings sought, among other relief, the invalidation of the 1961 Deed and a declaration of the validity of the 1965 Deed.

---

[1] As noted, the remaining three-elevenths remainder interest is held by the United States under the 1970 Indentures.

[2] As noted, Hallie Ortiz died in 1999 and left her interest in the three-acre parcel to Carolyn.

Carolyn's cross-complaint also alleged that the "United States has represented that it intends to reverse its prior position . . . by claiming an interest" in the three-acre parcel. App. at 79, ¶ 54.

Pursuant to the direction of the District Court, the United States answered Carolyn's cross-claim in November 2000. The United States' answer denied all of the allegations, including the allegation in paragraph fifty-four that it intended to assert an interest in the three-acre parcel. In addition, although the United States requested the dismissal of the cross-claim, it did not assert a counterclaim against Carolyn, or otherwise raise any claim to the three-acre parcel.

After the close of pleadings, the District Court ordered the parties to participate in mediation. In response, the United States circulated a letter to the parties stating it would not attend the mediation sessions "so long as the only issue that will be discussed is title to the three-acre parcel. The United States will allow the other parties (all family members) to resolve the issue of the three-acre parcel among themselves." App. at 306. Nonetheless, the United States did participate in the mediation at the request of the parties.

Mediation continued through March 2002, and produced a settlement between all the parties, except the United States, concerning their disputes under the various deeds. These parties memorialized a settlement agreement, and agreed to jointly move for entry of a consent judgment. However, after being advised of this settlement the United States

5

attempted to file a counterclaim against Carolyn Ortiz claiming the three-acre parcel created under the 1965 Deed was subject to the interests of the 1970 Indentures. The United States later conceded that the filing was an omitted compulsory counterclaim that could only be filed with leave of the District Court under Federal Rule of Civil Procedure 13(f).

The District Court conducted a hearing on the omitted counterclaim in June 2002. At the hearing, the District Court concluded that the United States had admitted Carolyn Ortiz's ownership of the three-acre parcel in its answer to the original 1998 complaint, and reiterated that position in 2000 by denying Carolyn Ortiz's allegation that it intended to assert an interest in the three-acre parcel. For these reasons, the District Court concluded that it would not be "conscionable" to permit the United States to reverse its prior position "this late in the game." App. at 415-16. Accordingly, on August 12, 2002 the District Court 1) entered an order denying the United States leave to file a counterclaim; 2) granted Carolyn Ortiz's motion for voluntary dismissal of her cross-claim against the United States; and 3) entered the proposed consent judgment submitted by the other parties (the "Consent Judgment"). The United States filed a motion for reconsideration, which the District Court entered on November 25, 2002. Finally, the District Court certified all the three August 12, 2002 orders as final pursuant to Federal Rule of Civil Procedure 54(b).

The United States' notice of appeal originally sought review of all three of the

District Court's August 12 orders. Subsequently, the United States abandoned its challenges to the denial of leave to file a counterclaim, and Carolyn Ortiz's voluntary dismissal. Accordingly, the United States now seeks only an order vacating the Consent Judgment.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1347 and this Court has jurisdiction pursuant to 28 U.S.C. § 1291. This Court reviews the entry of a consent judgment for an abuse of discretion. United States v. Southeastern Pennsylvania Transp. Auth., 235 F.3d 817, 822 (3d Cir. 2000). An abuse of discretion may rest on an error of law, or a misapplication of the law to the facts. United States v. Oregon, 913 F.2d 576, 580 (9th Cir. 1990).

III.

A. Standing

The Appellees argue that the United States lacks standing to bring this appeal. The Appellees argue that the United States has suffered no injury from the entry of the Consent Judgment because "[t]he Consent Judgment does not bar the United States from bringing a claim to invalidate the 1965 Deed. . . ." Red Br. at 29. The Appellees further reason that vacating the Consent Judgment will not revive the United States' claim against the 1965 Deed, as any future challenge will be barred by the doctrine of claim preclusion. The United States responds that because the Consent Judgment purports to bind the government, the requirements of standing are satisfied.

7

Generally , a party cannot appeal a consent judgment or decree. In re Sharon Steel Corp., 918 F.2d 434, 437 n.3 (3d Cir. 1990). This Court has recognized an exception to this rule, "if a party did not actually consent." Id.; see also Verzilli v. Flexon, Inc., 295 F.3d 421, 424 (3d Cir. 2002). Therefore, if the United States is bound by the Consent Judgment, the government may bring this appeal.

The United States argues that whatever the intent of the parties, or the District Court, the plain language of the Consent Judgment applies to the United States. This Court has noted that a consent judgment "is a hybrid of a contract and a court order," embodying the agreement of the parties "and as such is in some respects contractual in nature." Holland v. New Jersey Dep't of Corrs., 246 F.3d 267, 277 (3d Cir. 2001). Therefore, "since consent decrees and orders have many of the attributes of ordinary contracts, they should be construed basically as contracts." United States v. ITT Cont'lBanking Co., 420 U.S. 223, 236-37 (1975); Sault Ste. Marie Tribe of Chippewa v. Engler, 146 F.3d 367, 372 (6th Cir. 1998); Jeff D. v. Andrus, 899 F.2d 753,759 (9th Cir. 1990).

The interpretation of a consent judgment is governed by principles of local law guiding the interpretation of contracts. Jeff D., 899 F.2d at 759. The Virgin Islands have adopted the Restatement (Second) of Contracts as the definitive source of decisional law. 1 V.I.C. § 4; James v. Zurich-American Ins. Co., 203 F.3d 250, 255 (3d Cir. 2000). Contracts in the Virgin Islands are interpreted as a matter of law, if the interpretation does

8

not depend on the credibility of, or reasonable inferences from, extrinsic evidence. Tamarind Resort Assoc. v. Gov't of the Virgin Islands, 138 F.3d 107, 110 (3d Cir. 1998). In addition "[i]t is axiomatic that where the language of a contract is clear and unambiguous, it must be given its plain meaning." Id.

In the present case, the Consent Judgment contains three relevant provisions. First, that "[a]ny and all claims by any of the parties to this action, and / or anyone claiming through them, to void, cancel, or invalidate the . . . [1965 Deed] are hereby declared to be barred . . . ." App. at 22. Second, that "[a]ny and all claims or causes of action, for the right to possession of the properties conveyed by the . . . [1965 Deed] are barred and extinguished . . . ." App. at 22. Third, that the 1965 Deed "is a valid and legally enforceable deed." App. at 24. The Consent Judgment does not limit the scope of these provisions to the moving litigants; rather, it purports to settle all the claims of all the parties to the action.

The Appellees do not offer any alternative interpretation of the Consent Judgment's language, but as noted, do assert that because "[t]he Consent Judgment does not bar the United States from bringing a claim to invalidate the 1965 Deed," the government has suffered no injury. Red Br. at 29. This reasoning, however, is contrary to their position in the District Court where they argued "[w]hat we change by entry of the consent judgment would be that the United States, and everybody else, would be forever barred from disputing the validity of any of these deeds." App. at 394.

9

The Appellees position in the District Court is consistent with the plain language of the Consent Judgment. The Consent Judgment settles the rights of all the parties to the underlying action, including the United States. Moreover, as discussed below, the United States did not consent to the entry of the Judgment. Accordingly, as a party to this suit whose rights were resolved by a consent judgment entered without its consent, the United States has standing to bring this appeal under this Court's decision in <u>In re Sharon Steel</u>.

B. The Consent Judgment

The United States argues that the Consent Judgment was entered without the government's consent, and thus must be vacated. It is well-settled that "it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all." <u>Local No. 93 v. City of Cleveland</u>, 478 U.S. 501, 522 (1986); <u>Harris v. Pernsley</u>, 820 F.2d 592, 603 (3d Cir. 1987) ("The source of the district court's authority to enter a consent decree is the parties' agreement."). This jurisdictional requirement is unsurprising, as "it hardly makes sense to refer to a document as a 'consent' [judgment] when it is based on something other than the parties' voluntary agreement." <u>King v. Walters</u>, 190 F.3d 784, 788 (7th Cir. 1999). Accordingly, without the consent of the parties to the settlement, a court lacks the power to enter a judgment purportedly based on consent. <u>Reynolds v. Roberts</u>, 251 F.3d 1350, 1357 (11th Cir. 2001)

The Appellees do not directly dispute these settled principles. They focus their arguments on the issue of preclusion, and not the validity of the Consent Judgment. The

10

Appellees' brief devotes great length to whether the United States will be precluded from challenging the construction of the 1965 Deed in a subsequent action given its failure to assert a compulsory counterclaim. That question raises a host of complex legal questions concerning the doctrines of claim preclusion (res judicata), issue preclusion (collateral estoppel), and equitable estoppel. However, the parties appear to correctly acknowledge that none of these issues are before this Court on this appeal. Blue Br. at 20 ("[T]he decision whether the United States is forever barred from making such a claim is a decision for another day."); Red Br. at 20 ("The doctrines of res judicata and claim preclusion now prohibit the United States, as a matter of law, from pursuing a claim to contest the validity of the 1965 Deed . . . ."); Grey Br. at 6 ("[T]he question whether the United States might be barred from contesting the 1965 Deed was not before the district court and thus is not properly before this Court now."). Therefore, this Court need not address the substance of the Appellees' preclusion arguments beyond their relevance to the Consent Judgment.

The Appellees also concede that the United States never consented to the entry of the Consent Judgment. As noted, the United States did not consent to the settlement reached by the parties through mediation, and did not join in the parties' application to formalize the settlement in a consent judgment. Indeed, the United States opposed entry of a consent order, and later sought relief from the District Court's decision through a motion for reconsideration. The Appellees do not contest these facts, and even agree that

11

"[t]he Consent Judgment does not bar the United States from bringing a claim to invalidate the 1965 Deed. . . . The purpose of the Consent Judgment is to bar the Appellees—all of whom consented—from contesting the validity of the 1965 Deed, not the United States." Red Br. at 29.

In sum, the Appellees have not raised any arguments directly supporting the entry of a Consent Judgment that barred "[a]ny and all claims by any of the parties to this action" against the 1965 Deed, without the consent by the United States. Moreover, the Appellees' arguments do not dispute that if the Consent Judgment binds the United States, it was entered in excess of the District Court's authority. For these reasons, the Consent Judgment impermissibly resolves the claims of a non-consenting party and should be vacated.

C. Claim Preclusion

The Appellees devote much of their brief to arguing that the United States is precluded from challenging the 1965 Deed. They note that the District Court's denial of the government's motion to file an omitted compulsory counterclaim has not been appealed. Therefore, they argue that because the doctrines of res judicata apply to omitted compulsory counterclaims, the United States is now barred from re-litigating its claim against the 1965 Deed. Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., 292 F.3d 384, 391 (3d Cir. 2002) (noting relationship between omitted compulsory counterclaims under Federal Rule of Civil Procedure 13(a) and doctrine of

12

claim preclusion); Wright et al., Federal Practice § 1417 at 129 ("A failure to plead a compulsory counterclaim bars a party from bringing a later independent action on that claim.").

They attempt to link this argument to their standing challenge but the future viability of the government's claim is a substantive issue, and "to establish standing, it is not necessary for litigants to demonstrate that they will prevail on the merits of their claim." Pansy v. Borough of Stroudsburg, 23 F.3d 772, 777 (3d Cir. 1994). The preclusion argument is best viewed as an alternative basis for upholding the Consent Judgment. However, the doctrine of preclusion is not an appropriate basis for affirming the decision of the District Court.[3]

First, affirming the District Court's entry of the Consent Judgment on the basis of claim preclusion would necessarily validate a consent judgment entered without the consent of a party. The only grounds for such a result appears to rest on a narrow (and now novel) reading of Ward Baking. If the Court is inclined to adopt that approach, however, it is unnecessary to reach the issue of preclusion at all, as the Court would instead hold that the government's omission of a compulsory counterclaim obviated the need for its consent. Therefore, the doctrine of claim preclusion does not provide a truly

---

[3] The United States also argues this Court should not address the doctrine of preculsion because the District Court did not make any rulings on whether the United States was precluded from raising its challenge to the 1965 Deed in a subsequent action. However, this Court may affirm a judgment on any ground apparent from the record, even if the district court did not reach the issue. Levy v. Sterling Holding Co., LLC, 314 F.3d 106, 120 (3d Cir. 2002).

alternative grounds for affirmance; rather it merely circles back to whether a consent judgment may be entered without the actual consent of the parties. As discussed, the application of such an exception is not likely appropriate in this case (if appropriate at all).

There is no basis for invoking the doctrine of claim preclusion in this case. Generally, claim preclusion requires a final judgment on the merits in a prior suit involving the same parties or their privies, and a subsequent suit based on the same cause of action. Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 158 (3d Cir. 2001); Corestates Bank, N.A. v. Huls Am., Inc., 176 F.3d 187, 194 (3d Cir. 1999). In this case, however, there is no "final judgment on the merits in a prior suit" on which to base an application of claim preclusion. The only judgment in this case is the Consent Judgment, and as the United States correctly concludes, that result "asks the Court to presume the Consent Judgment is valid in order to preclude any inquiry into its validity." Grey Br. at 10.

Similarly, the District Court's orders denying the government's motion to file its omitted counterclaim, and granting Carolyn Ortiz's voluntary dismissal without prejudice, are mere procedural rulings, not final judgments on the merits. Fed. R. Civ. P. 41(a)(2) ("Unless otherwise specified in the order, a dismissal [by order of court] is without prejudice."); see, e.g., Curtis v. Citibank, N.A., 226 F.3d 133, 139-40 (2d Cir. 2000) (noting that claim preclusion does not attach to a denial of leave to file an amended complaint on procedural rather than substantive grounds). The District Court's

14

certification of these motions as final judgments under Federal Rule of Civil Procedure 54(b) does not alter this conclusion. Rule 54(b) "allows certification of finality in situations where a claim or a party's interest is adjudicated to finality, but the claim or party happens to be a part of a continuing litigation . . . ." <u>Nat'l Union Fire Ins. Co. v. City Savs. F.S.B.</u>, 28 F.3d 376, 382 (3d Cir. 1994). The Rule thus "parses out final claims or parties whose claims are final from a multiclaim or multiparty litigation," and "does not operate to magically deem a non-final claim 'final'." <u>Id.</u> For these reasons, there is no final judgment on the merits from a prior suit warranting claim preclusion on this appeal.

Claim preclusion is not a suitable basis for affirming the District Court's decision, because claim preclusion is either substantively inapplicable, or necessarily inconsistent with the requirement that a consent judgment flow from the actual consent of the parties.

IV.

The order of the District Court denying reconsideration entered on November 25, 2002, as well as the Consent Judgment entered by the District Court on August 12, 2002, will both be vacated, and the case remanded for further proceedings consistent with this opinion.

TO THE CLERK:

Please file the foregoing opinion.

 /s/ Robert E. Cowen
United States Circuit Judge